1  Arturo M. Cisneros, #120494 (arturo@mclaw.org)
   MALCOLM ♦ CISNEROS, A Law Corporation
2  2112 Business Center Drive, Second Floor
   Irvine, California 92612
3  (949) 252-9400 (Telephone)
   (949) 252-1032 (Facsimile)
4

5  Attorneys for Todd A. Frealy,
   Chapter 7 Trustee
6

7

8            UNITED STATES BANKRUPTCY COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                RIVERSIDE DIVISION

11  In re                          Case No. 6:14-12539 MJ

12  JOAQUIN ANDRES "ANDY" ACOSTA,  Chapter 7

13              Debtor.            **TRUSTEE'S MOTION FOR**
                                   **APPROVAL GLOBAL SETTLEMENT**
14                                 **AGREEMENT; MEMORANDUM OF**
                                   **POINTS AND AUTHORITIES;**
15                                 **DECLARATION OF TODD A. FREALY**
                                   **IN SUPPORT THEREOF**
16
                                   Date:   November 29, 2016
17                                 Time:   10:00 a.m.
                                   Ctrm:   301
18                                         3420 Twelfth Street
                                           Riverside, CA 92501
19

20

21  **TO THE HONORABLE MEREDITH A. JURY, UNITED STATES BANKRUPTCY**

22  **JUDGE, AND ALL INTERESTED PARTIES:**

23       TODD A. FREALY ("Trustee"), Chapter 7 Trustee, is seeking an Order approving a

24  Global Settlement Agreement which he entered into in his capacity as Chapter 7 Trustee for the

25  bankruptcy estate of <u>Joaquin Andres "Andy" Acosta</u> ("Debtor"), Case No. 6:14-12539 MJ

26  ("Individual Estate"), with the Debtor. The Trustee and Debtor will sometimes be referred to

27  collectively as the "Parties." In support thereof, Trustee represents as follows:

28  ///

                              1

# I.

## BACKGROUND

1.    On February 28, 2014 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 et seq.) before the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court") entitled, *In re Joaquin Andres "Andy" Acosta* and identified as Case No. 6:15-bk-12539-MJ. Trustee is the duly appointed, qualified, and acting Chapter 7 trustee of Debtor's bankruptcy estate ("Estate").

2.    Debtor is the 100% shareholder and President of A.J. Acosta Co., Inc. On the Petition Date, A.J. Acosta Co., Inc. also filed a voluntary Chapter 7 petition before the Bankruptcy Court entitled, *In re A.J. Acosta Co., Inc.* and identified as Case No. 6:14-bk-12550-MJ ("Corporate Debtor"). The Corporate Debtor's case was converted to Chapter 11 on March 18, 2014, and converted back to Chapter 7 on July 31, 2015. John P. Pringle ("Pringle") is the duly appointed, qualified, and acting Chapter 7 trustee of A.J. Acosta Co., Inc.'s bankruptcy estate.

## A.    REAL PROPERTY

3.    The Individual Estate includes parcels of real property including, but not necessarily limited to the following:

i.    **Vacant Land Located At 1000 North Shore Drive, Big Bear, California 92314 ("North Shore Property");**

ii.   **Commercial Property Located At 42112 Big Bear Blvd., Big Bear Lake, California 92315 ("BBB Property");**

iii.  **Vacant Lot Located At 1080 Cascade Street, Big Bear, California ("Cascade Property");**

iv.   **Residential Property Located At 460 Catalina Road, Big Bear, California ("Catalina Property");**

v.    **Residential Property Located At 1725 Angels Camp Rd., Big Bear City, California 92314 ("Angels Camp Property"); and**

vi.   **Residential Property Located At 30827 Live Oak Drive, Running Springs, California 92382 ("Live Oak Property")**

2

1    The above properties may be collectively referred to as "Real Properties".

2        4.      In the Debtor's Schedules, he stated that the BBB Property had a value of

3    $1,000,000, and identified William D. Long ("Long") as a secured creditor and holder of a First

4    Deed of Trust in the amount of $850,000.

5        5.      After Trustee's investigation into the BBB Property, the Trustee enlisted the

6    services of Steven M. Speier of Glass Ratner Management & Realty Advisors, LLC ("Broker"), as

7    real estate broker to market the BBB Property, and Order authorizing its employment was entered

8    by the Court on December 8, 2015. The Trustee held off on marketing the BBB Property pending

9    settlement negotiations with the Debtor.  Based upon the Broker's opinion of value, the Trustee

10   intended on marketing the BBB Property with an initial list price of $795,000, and expected to

11   procure a buyer at a purchase price of approximately $600,000 to $650,000.

12       6.      The Trustee discovered that the alleged debt owing Long was reduced from

13   $850,000 to $200,000; and may have been paid in full, and/or otherwise invalid, and voidable for

14   the benefit of the Individual Estate. On November 13, 2015, the Trustee caused to be filed an

15   adversary proceeding seeking an avoidance and recovery of the Long Note and Deed of Trust. The

16   Clerk entered Default against Long on December 24, 2015. Thereafter, Trustee entered into a

17   settlement agreement whereby the Deed of Trust in the amount of $200,000 was avoided, and the

18   avoided interest was recovered and preserved for the benefit of the Individual Estate.

19       7.      Despite numerous requests by the Trustee and his counsel, the Debtor continued to

20   hold possession of the BBB Property.  In addition, items of personal property belonging to the

21   Individual Estate were located on the BBB Property.

22       8.      Due to the Debtor's failure to turn over the BBB Property, the Trustee caused a

23   Motion for Order directing the Debtor to turn over possession of the BBB Property (Doc 371) to

24   the Trustee. The Trustee's Motion was granted, and the Court entered an Order on April 13, 2016

25   (Doc 415). However, the Debtor has not turned over the same and continues in possession. The

26   Trustee is advised that the BBB Property is insured, but unaware of the current status of real

27   property taxes.

28   ///

3

**B.    PERSONAL PROPERTY ("INVENTORY")**

9.    The Individual Estate holds an interest in certain items of personal property, including heavy equipment and other vehicles ("Inventory"). The Inventory is now, and has been, primarily in the possession of the Debtor and held at various locations throughout the Inland Empire.

10.    While the Corporate Debtor was in Chapter 11, the ownership of the Inventory was disputed, with both the Debtor and the Corporate Debtor claiming to have an interest in same. However, some of the Inventory was not necessary for the reorganization of the Corporate Debtor while in Chapter 11, and therefore the Debtor, Corporate Debtor, and Trustee agreed to liquidate same, and entered into a Settlement and Sharing Agreement ("1st Sharing Agreement"). The 1st Sharing Agreement provided for the manner of liquidation, and the division of proceeds from the sale of the Inventory between the two estates, wherein after payment of any applicable costs of sale, the net proceeds would be divided so that the Debtor's Estate receives 60% of the net proceeds, and the Corporate Debtor's Estate receives 40% of the net proceeds.

11.    The Inventory represents the items remaining to be sold under the 1st Sharing Agreement and prior Court order, as well as all other remaining personal property assets.

12.    Upon the conversion of the Corporate Debtor's case back to Chapter 7, and the appointment of Pringle, the Trustee and Pringle agreed to continue with the terms of the previous sharing agreement for the liquidation of the remaining assets, and also to share proceeds from the sale of similar personal property assets. Pursuant to the Order approving the 2nd Sharing Agreement, proceeds from any sale of personal property items was to be divided so that the Debtor's Estate retains 60% of the proceeds, and 40% of the proceeds shall be turned over to Pringle, as Trustee for the Corporate Debtor.

13.    The Debtor agreed to turn over and account for the Inventory to the Trustee or his auctioneer, on or before August 31, 2015. He did not comply with same. After further requests by the Trustee, the Debtor continued to fail to turn over such items. Therefore, on September 21, 2015, the Trustee caused to be filed a motion for order directing the Debtor to turn over the

///

4

1 Inventory (Doc 275), and on October 21, 2015, the Court entered its Order approving same (Doc

2 284). However, the Debtor remains in possession of the Inventory.

3        14.    The Debtor agreed to meet with the Trustee's Counsel to discuss the Inventory and

4 its various locations. At that time, the Debtor made a verbal offer for the purchase of the Inventory

5 for the sum of approximately $60,000. This offer appeared to be far below the value based upon

6 previous information reviewed by the Trustee and his Counsel.

7        15.    The Trustee caused his agent, Jack Pope of Popes Auctions and Antiques, to view

8 the Inventory and provide an estimation of value. Mr. Pope visited various locations with the

9 Debtor and visually inspected each item. Mr. Pope indicated that due to the age of each item, the

10 condition, and the cost associated with moving each item to either liquidate, or recycle for scrap

11 value, the Inventory had little net value. However, in the current location, and to be utilized by the

12 Debtor in his established business, the value for all items on the Inventory list was approximately

13 $100,000.

14 **C.    LITIGATION/APPEALS**

15        16.    Trustee has filed adversary proceedings (collectively, "Adversary Proceedings") in

16 the Individual Case, as follows:

17        i.    *Todd A. Frealy, Chapter 7 Trustee of the Estate of Joaquin Andres "Andy" Acosta*

18              *v. Joaquin Andres "Andy" Acosta, an individual, Flavio Camacho, an individual,*

19              *and Black Rock Capital, Inc., a Nevada Corporation.*, identified as Case No. 6:15-

20              ap-1325-MJ, filed November 4, 2015. Default judgment against Flavio Camacho

21              and Black Rock Capital entered March 24, 2016. Order granting default judgment

22              and dismissing adversary proceeding as to defendant Joaquin Andres "Andy"

23              Acosta only entered March 24, 2016.

24        ii.    *Todd A. Frealy, Chapter 7 Trustee of the Estate of Joaquin Andres "Andy" Acosta*

25              *v. Robert Lee Bell*, identified as Case No. 6:15-ap-01334-MJ, filed November 12,

26              2015. Default Judgment was entered March 9, 2016, and the adversary proceeding

27              has been closed by the Court.

28 ///

5

iii.  *Todd A. Frealy, Chapter 7 Trustee of the Estate of Joaquin Andres "Andy" Acosta*
*v. William D. Long.*, identified as Case No. 6:15-ap-01335-MJ, filed November 13,
2015. Order approving compromise and dismissing adversary proceeding was
entered April 4, 2016, , and the adversary proceeding has been closed by the Court.

iv.  *Todd A. Frealy, Chapter 7 Trustee of the Estate of Joaquin Andres "Andy" Acosta*
*v. Stanley Tulchin Accosiates – Western, Inc.*, identified as Case No. 6:15-ap-01338-
MJ, filed November 13, 2015. Order approving compromise and dismissing the
adversary proceeding was entered June 24, 2016, and the adversary proceeding has
been closed by the Court.

17.  Debtor has filed numerous documents in opposition to the Trustee's actions in the
Individual Case including, but not necessarily limited to the following appeals:

i.  a notice of appeal filed on June 13, 2016, referred to the United States District Court
for the Central District of California ("District Court"), and identified as Case No.
5:16-cv-1270-GHK;

ii.  a notice of appeal filed on June 13, 2016, referred to the District Court, and
identified as Case No. 5:16-cv-1271-GHK;

iii.  a notice of appeal filed on June 27, 2016, referred to the Ninth Circuit Bankruptcy
Appellate Panel ("BAP"), and identified as Case No. CC-16-1190; and

iv.  a notice of appeal filed on July 12, 2016, referred to the District Court, and
identified as Case No. 5:16-cv-1537-MWF (collectively, "Appeals").

18.  The Debtor wishes to retain the BBB Property and Inventory, and if authorized to
purchase the interests of the Debtor Estate and Corporate Debtor Estate in same, has agreed to fully
cooperate with the Trustee throughout the remaining administration of the Estate.

## II.

## SETTLEMENT AGREEMENT

19.  To avoid the expense and uncertainty of litigation, and without any admission of
liability, the Parties deem it in their best interests to reach a global settlement of all of the matters
encompassed herein ("Global Settlement Agreement"). A true and copy of the Global Settlement

6

1 Agreement is attached to the accompanying declaration of Todd A. Frealy, the primary terms of
2 which are as follows:

3      **a.**     Debtor shall pay the Estate the sum of ONE HUNDRED THOUSAND DOLLARS
4 ($100,000.00) for purchase of the Estate's Interest in the Inventory from the Trustee; and FOUR
5 HUNDRED AND FIFTY THOUSAND DOLLARS ($450,000.00) for purchase of the Estate's
6 Interest in the BBB Property from the Trustee. A motion for approval of the sales is being filed
7 concurrently herewith.

8      **b.**     Subject only to real property taxes, the BBB Property will remain in the Debtor's
9 name, however, same will be free and clear of all liens pursuant to section 363(f) of the
10 Bankruptcy Code. In addition, all right, title and interest of the Debtor's Estate and the Corporate
11 Debtor's Estate in the Inventory will remand to the Debtor, with the proceeds of sale to be
12 distributed pursuant to the Order Approving Second Settlement and Sharing Agreement entered on
13 December 15, 2015.

14      **c.**     The Approval Order shall further provide that all of the Appeals are dismissed
15 pursuant to Rule 8023 of the Federal Rules of Bankruptcy Procedure. Copies of the Approval
16 Order shall be filed in the dockets of the District Court and the BAP in each of the Appeals, as
17 necessary.

18      **d.**     Debtor agrees to take no further action to contest or otherwise interfere with
19 Trustee's actions in the Individual Case and Adversary Proceedings including, but not necessarily
20 limited to: (1) filing additional appeals of, or motions to vacate or to reconsider, any existing
21 orders or judgments of the Bankruptcy Court including, but not necessarily limited to, any
22 judgments entered in the Adversary Proceeding and orders approving the sales of any of the Real
23 Properties; (2) contesting or otherwise interfering with Trustee's efforts to administer any assets of
24 the Individual Estate by filing or serving objections to same, or by trespassing on, or committing
25 waste to, any such assets; (3) contesting or otherwise interfering with Trustee's efforts to evaluate,
26 object to, or pay the claims of creditors of the Individual Estate or to compromise with such
27 creditors; and/or (4) filing motions to dismiss the Individual Case and/or Adversary Proceedings,
28 to disqualify the Bankruptcy Court, or to remove Trustee and/or his counsel.

7

1    e.    Debtor further agrees to cooperate with Trustee with respect to all matters identified

2  in paragraph 19(d) above including, but not necessarily limited to, promptly responding to

3  Trustee's requests for information, maintaining insurance on all assets of the Individual Estate and

4  providing proof of such insurance, and otherwise complying with his duties as a debtor under the

5  Bankruptcy Code.

6    WHEREFORE, the Trustee respectfully requests the Court to enter an order approving the

7  Global Settlement Agreement; and granting the Trustee such other relief as the Court deems just

8  and proper.

9  Dated:  11/4/16                    MALCOLM & CISNEROS
                                      A Law Corporation
10

11                          By:    Arturo M. Cisneros,
                                   Counsel for Todd A. Frealy, Chapter 7 Trustee
12                                 For the Estate of Joaquin Andres "Andy" Acosta

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### THE COURT HAS THE AUTHORITY TO APPROVE

4

### THE SETTLEMENT REACHED BY THE TRUSTEE

5      Upon the properly noticed motion of Trustee, the Court may approve a compromise or

6   settlement reached by the Trustee.  See Rule 9019(a), Federal Rules of Bankruptcy Procedure.

7   Trustee, concurrent with the filing of this motion, has given creditors and all interested parties the

8   requisite notice and opportunity to respond.  The Court, in order to grant the motion, must find that

9   the proposed settlement is fair and equitable.

10

### II.

11

### THE PROPOSED SETTLEMENT IS FAIR AND EQUITABLE AND

12

### THEREFORE THIS COURT SHOULD EXERCISE ITS DISCRETION AND

13

### APPROVE THE PROPOSED SETTLEMENT

14  **A.      A Compromise That Satisfies The "Reasonable Standard" Should Be Approved**

15      Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after notice and a

16  hearing, the court may approve a compromise or settlement."  Rule 9019(a) commits the approval

17  or rejection of a compromise to the sound discretion of a bankruptcy court.  Sound discretion is

18  judicial power exercised fairly and equitably.  As the Supreme Court has stated:

19      The term "discretion" denotes the absence of a hard and fast rule . . . when
        invoked as a guide to judicial action, it means a sound discretion, that is to
20      say, a discretion exercised not arbitrarily or willfully, but with regard to
        what is right and equitable under the circumstances and the law, and
21      directed by the reasonableness and conscience of the judge to a just result.

22  *Lagnes v. Green*, 282 U.S. 531, 541, 151 S.Ct. 243, 247 (1931).

23      According to the Ninth Circuit Court of Appeals, "the law favors compromise and not

24  litigation for its own sake" and bankruptcy courts have "great latitude in approving settlements."

25  *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976); *Woodson v. Fireman's Fund Ins. Co. (In re*

26  *Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).

27  ///

28  ///

9

1    In determining whether a proposed settlement should be approved, two principles should

2  guide the Court.  First, "[t]o minimize litigation and expedite the administration of a bankruptcy

3  estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393

4  (3d Cir. 1996) [citing 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. rev. 1993)].

5  Second, in assessing a settlement agreement the court is not obliged to determine and rule upon

6  disputed facts and questions of law. "Instead the Court's duty is to 'canvass the issues' and decide

7  whether the settlement falls below the nadir in the range of reasonableness." *Cosoff v. Rodman (In*

8  *re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822, 104 S. Ct. 89,

9  78 L. Ed. 2d 97 (1983).

10    The question is not whether a better settlement might have been achieved or a better result

11  achieved if the matter was litigated.  Instead, the court should approve settlements which meet a

12  minimal threshold of reasonableness.

13  **B.    The Settlement Should be Approved Because It Is Above the Nadir In The Range Of**

14  **Reasonableness**

15    The Trustee's decision to enter into this settlement falls well above the lowest point in the

16  range of reasonableness.  The sales, as proposed in the accompanying motion for approval filed

17  concurrently herewith, are in the best interests of the estate and should be approved.  Assuming the

18  Court approves this Motion, the Estate will receive proceeds in the approximate amount of

19  $322,500 from the sales for the benefit of unsecured creditors and costs of administration; the

20  secured debt to the Estate's largest creditor will be reduced by $187,500; and the related corporate

21  estate will receive $40,000. In addition, the Global Settlement resolves many outstanding matters

22  with the Debtor as he has agreed to provide full cooperation with the Trustee going forward. This

23  will allow the Trustee to complete his administration of the remaining assets of the estate without

24  further opposition and delay due to the Debtor's actions, and will cease the incurring of additional

25  unnecessary legal expenses regarding the appeals.

26  ///

27  ///

28  ///

10

**III.**

**THE COMPROMISE SHOULD BE APPROVED UNDER THE FOUR-PART**

**TEST GOVERNING APPROVAL OF COMPROMISES**

Case law regarding the exercise of the court's discretion in determining whether a compromise satisfies the reasonableness standard is "remarkably consistent in establishing that there are but four considerations which a court must address." *In Re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987). These considerations are:

        (1)    the probability of success in the litigation;

        (2)    the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

        (3)    the likely difficulty in collection; and

        (4)    the paramount interest of creditors.

*Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir.), cert. denied, 479 U.S. 854 (1986).

**A.**    **Probability of Success**

The Trustee has been very successful in obtaining appropriate legal decisions regarding the assets of this Estate, and is very confident that the same would occur going forward. However, given the litigious nature of this Debtor, including oppositions to almost every motion filed on behalf of the Trustee, and the filing of a number of appeals, success may have little value as the majority of funds brought into the Estate would be exhausted in administrative fees.

**B.**    **Cost, Complexity and Delay**

The Trustee believes the costs, complexity, and delay occasioned by litigation strongly militate in favor of the compromise. This Estate has incurred extensive litigation costs to date, and the Debtor's continued actions taken in opposition to the majority of Trustee's actions, only increases the cost of administration. As the Court has seen from the multiple adversary proceedings and discovery of unscheduled assets, this case is very complex and further litigation would only delay payment to creditors. In addition, the administrative expenses would have

///

11

1  priority over general unsecured claims, and thus, continued litigation can only reduce any

2  distribution to creditors of the estate.

3     In addition to the net proceeds for his purchase of the assets, the Debtor has agreed to allow

4  the Trustee to administer the Estate without further interference. This will include:

5     (1)   Debtor shall agree to the dismissal of all Appeals pursuant to Rule 8023 of the

6           Federal Rules of Bankruptcy Procedure;

7     (2)   Debtor shall take no further action to contest or otherwise interfere with Trustee's

8           actions in the Individual Case and Adversary Proceedings;

9     (3)   Debtor will not contest or otherwise interfere with Trustee's efforts to administer

10          any assets of the Individual Estate by filing or serving objections to same, or by

11          trespassing on, or committing waste to, any such assets;

12    (4)   Debtor will not contest or otherwise interfere with Trustee's efforts to evaluate,

13          object to, or pay the claims of creditors of the Individual Estate or to compromise

14          with such creditors; and

15    (5)   Debtor will not file motions to dismiss the Individual Case and/or Adversary

16          Proceedings, to disqualify the Bankruptcy Court, or to remove Trustee and/or his

17          counsel.

18    The Debtor has also agreed to cooperate with Trustee with respect to all matters identified

19 above including, but not necessarily limited to, promptly responding to Trustee's requests for

20 information, maintaining insurance on all assets of the Individual Estate and providing proof of

21 such insurance, and otherwise complying with his duties as a debtor under the Bankruptcy Code.

22 **C.    The Difficulty of Collection**

23    The time associated with continued investigation and potential litigation could cause the

24 assets to diminish in value, resulting in reduced net proceeds for the benefit of the Estate's

25 creditors. In addition, due to the multiple locations and size of the items on the Inventory list, the

26 Trustee's agent believes it would be very difficult to liquidate the Inventory. In addition, by

27 allowing for the "equity buy back," the Estate is saving on Auctioneer fees and costs with regard to

28 the Inventory and a substantial broker commission regarding the BBB Property.

12

1    The Trustee would also be forced to evict the Debtor from the BBB Property in the event

2 the compromise is not approved. Given the history of this case and the Debtor's actions taken in

3 an effort to protect his assets, this could prove to be very difficult and costly to the Estate.

4 **D.    The Interests of Creditors**

5    The final, but most significant, part of the analysis involves an evaluation of whether the

6 proposed settlement is in the best interests of creditors. See generally, *In Re Flight Trans. Corp.*

7 *Securities Litigation*, 730 F.2d 1128, 1135-36 (8th Cir. 1984). In this case, the proposed settlement

8 is in the best interests of general unsecured creditors of both the Debtor's Estate and the Corporate

9 Debtor's Estate because it will generate substantial funds for the benefit of the creditors and ensure

10 that costs of administration are kept to a minimum going forward.

11    If this compromise, and the sale motion to be heard concurrently herewith, are approved as

12 requested, the Estate will receive proceeds in the approximate amount of $302,500 from the sales

13 for the benefit of unsecured creditors and costs of administration; the secured debt to the Debtor

14 Estate's largest creditor will be reduced by $187,500; and the related Corporate Debtor Estate will

15 receive $40,000. As such, Trustee contends that the proposed settlement is in the best interests of

16 creditors.

17                                            **IV.**

18        **THE SETTLEMENT AGREEMENT HAS BEEN REACHED THROUGH THE**

19            **EXERCISE OF MOVANT'S SOUND BUSINESS JUDGMENT**

20    The compromise was reached as a result of arms-length negotiations between Parties over

21 an extended period of time and with no connections to one another. Considering the facts, costs,

22 risks, and delays occasioned by further forensic investigation and litigation, Trustee submits that

23 the compromise is fair and equitable and in the best interest of creditors.

24 ///

25 ///

26 ///

27 ///

28 ///

13

# V.

## CONCLUSION

Based on the foregoing, the Trustee respectfully requests that he be authorized to enter into and proceed with the terms set forth in the Global Settlement Agreement proposed herein, and for such other and further relief as this Court deems just and proper.

Dated: 11/4/16

MALCOLM & CISNEROS
A Law Corporation

By:    Arturo M. Cisneros,
Counsel for Todd A. Frealy, Chapter 7 Trustee
For the Estate of Joaquin Andres "Andy" Acosta

14

# DECLARATION OF TODD A. FREALY

I, Todd A. Frealy, declare as follows:

1.    I am the duly appointed and acting Chapter 7 Trustee for the bankruptcy estate of Joaquin Andres "Andy" Acosta ("Debtor"), and as such, have personal knowledge of the facts stated herein and if called upon to testify I could and would competently testify thereto.

2.    I submit this declaration in support of my motion for an order approving a Global Settlement Agreement (a copy of which is attached hereto as Exhibit "1"), which I have entered into, in my capacity as Chapter 7 Trustee, with the Debtor.

3.    On February 28, 2014 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 et seq.) before the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court") entitled, *In re Joaquin Andres "Andy" Acosta* and identified as Case No. 6:15-bk-12539-MJ. Thereafter, I was appointed as Chapter 7 Trustee for the Bankruptcy Estate.

4.    Debtor is the 100% shareholder and President of A.J. Acosta Co., Inc. On the Petition Date, A.J. Acosta Co., Inc. also filed a voluntary Chapter 7 petition before the Bankruptcy Court entitled, *In re A.J. Acosta Co., Inc.* and identified as Case No. 6:14-bk-12550-MJ ("Corporate Debtor"). The Corporate Debtor's case was converted to Chapter 11 on March 18, 2014, and converted back to Chapter 7 on July 31, 2015. John P. Pringle ("Pringle") is the duly appointed, qualified, and acting Chapter 7 trustee of A.J. Acosta Co., Inc.'s bankruptcy estate.

5.    The Individual Estate includes parcels of real property including, but not necessarily limited to the following:

  i.    **Vacant Land Located At 1000 North Shore Drive, Big Bear, California 92314 ("North Shore Property");**

  ii.    **Commercial Property Located At 42112 Big Bear Blvd., Big Bear Lake, California 92315 ("BBB Property");**

  iii.    **Vacant Lot Located At 1080 Cascade Street, Big Bear, California ("Cascade Property");**

///

15

iv.     Residential Property Located At 460 Catalina Road, Big Bear, California ("Catalina Property");

v.      Residential Property Located At 1725 Angels Camp Rd., Big Bear City, California 92314 ("Angels Camp Property"); and

vi.     Residential Property Located At 30827 Live Oak Drive, Running Springs, California 92382 ("Live Oak Property")

The above properties may be collectively referred to as "Real Properties".

6.      In the Debtor's Schedules, he stated that the BBB Property had a value of $1,000,000, and identified William D. Long ("Long") as a secured creditor and holder of a First Deed of Trust in the amount of $850,000.

7.      After my investigation into the BBB Property, I enlisted the services of Steven M. Speier of Glass Ratner Management & Realty Advisors, LLC ("Broker"), as real estate broker to market the BBB Property, and Order authorizing its employment was entered by the Court on December 8, 2015. I held off on marketing the BBB Property pending settlement negotiations with the Debtor. Based upon the Broker's opinion of value, I intended on marketing the BBB Property with an initial list price of $795,000, and expected to procure a buyer at a purchase price of approximately $600,000 to $650,000.

8.      I discovered that the alleged debt owing Long was reduced from $850,000 to $200,000; and may have been paid in full, and/or otherwise invalid, and voidable for the benefit of the Estate. On November 13, 2015, I caused to be filed an adversary proceeding seeking an avoidance and recovery of the Long Note and Deed of Trust. The Clerk entered Default against Long on December 24, 2015. Thereafter, I entered into a settlement agreement whereby the Deed of Trust in the amount of $200,000 was avoided, and the avoided interest was recovered and preserved for the benefit of the Bankruptcy Estate.

9.      Despite numerous requests by me and my counsel, the Debtor continued to hold possession of the BBB Property. In addition, items of personal property belonging to the Estate were located on the BBB Property.

///

16

1    10.    Due to the Debtor's failure to turn over the BBB Property, I caused a Motion for

2 Order directing the Debtor to turn over possession of the BBB Property (Doc 371) to me.  The

3 Motion was granted, and the Court entered an Order on April 13, 2016 (Doc 415).  However, the

4 Debtor has not turned over the same and continues in possession.  I am advised that the BBB

5 Property is insured, but am unaware of the current status of real property taxes.

6    11.    The Estate holds an interest in certain items of personal property, including heavy

7 equipment and other vehicles ("Inventory").  The Inventory is now, and has been, primarily in the

8 possession of the Debtor and held at various locations throughout the Inland Empire.

9    12.    While the Corporate Debtor was in Chapter 11, the ownership of the Inventory was

10 disputed, with both the Debtor and the Corporate Debtor claiming to have an interest in same.

11 However, some of the Inventory was not necessary for the reorganization of the Corporate Debtor

12 while in Chapter 11, and therefore the Debtor, Corporate Debtor, and I agreed to liquidate same,

13 and entered into a Settlement and Sharing Agreement ("1st Sharing Agreement").  The 1st Sharing

14 Agreement provided for the manner of liquidation, and the division of proceeds from the sale of the

15 Inventory between the two estates, wherein after payment of any applicable costs of sale, the net

16 proceeds would be divided so that the Individual Debtor's Estate receives 60% of the net proceeds,

17 and the Corporate Debtor's Estate receives 40% of the net proceeds.

18    13.    The Inventory represents the items remaining to be sold under the 1st Sharing

19 Agreement and prior Court order, as well as all other remaining personal property assets.

20    14.    Upon the conversion of the Corporate Debtor's case back to Chapter 7, and the

21 appointment of Pringle, Pringle and I agreed to continue with the terms of the previous sharing

22 agreement for the liquidation of the remaining assets, and also to share proceeds from the sale of

23 similar personal property assets.  Pursuant to the Order approving the 2nd Sharing Agreement,

24 proceeds from any sale of personal property items was to be divided so that the Debtor's Estate

25 retains 60% of the proceeds, and 40% of the proceeds shall be turned over to Pringle, as Trustee

26 for the Corporate Debtor.

27    15.    I am informed and believe and therefore allege that the Debtor agreed to turn over

28 and account for the Inventory to me or my auctioneer, on or before August 31, 2015. He did not

17

1   comply with same. After further requests, the Debtor continued to fail to turn over such items.

2   Therefore, on September 21, 2015, I caused to be filed a motion for order directing the Debtor to

3   turn over the Inventory (Doc 275), and on October 21, 2015, the Court entered its Order approving

4   same (Doc 284). However, the Debtor remains in possession of the Inventory.

5       16.    The Debtor agreed to meet with my Counsel to discuss the Inventory and its various

6   locations. I am informed and believe, and therefore allege that at that time, the Debtor made a

7   verbal offer for the purchase of the Inventory for the sum of approximately $60,000. This offer

8   appeared to be far below the value based upon my and my counsel's previous review of

9   information.

10      17.    I caused my agent, Jack Pope of Popes Auctions and Antiques, to view the

11   Inventory and provide an estimation of value. Mr. Pope visited various locations with the Debtor

12   and visually inspected each item. Mr. Pope indicated that due to the age of each item, the

13   condition, and the cost associated with moving each item to either liquidate, or recycle for scrap

14   value, the Inventory had little net value. However, in the current location, and to be utilized by the

15   Debtor in his established business, the value for all items on the Inventory list was approximately

16   $100,000.

17      18.    I have caused to be filed adversary proceedings (collectively, "Adversary

18   Proceedings") in the Individual Estate, as follows:

19      i.    *Todd A. Frealy, Chapter 7 Trustee of the Estate of Joaquin Andres "Andy" Acosta*

20         *v. Joaquin Andres "Andy" Acosta, an individual, Flavio Camacho, an individual,*

21         *and Black Rock Capital, Inc., a Nevada Corporation.*, identified as Case No. 6:15-

22         ap-1325-MJ, filed November 4, 2015. Default judgment against Flavio Camacho

23         and Black Rock Capital entered March 24, 2016. Order granting default judgment

24         and dismissing adversary proceeding as to defendant Joaquin Andres "Andy"

25         Acosta only entered March 24, 2016.

26   ///

27   ///

28   ///

ii.   *Todd A. Frealy, Chapter 7 Trustee of the Estate of Joaquin Andres "Andy" Acosta v. Robert Lee Bell*, identified as Case No. 6:15-ap-01334-MJ, filed November 12, 2015. Default Judgment was entered March 9, 2016, and the adversary proceeding has been closed by the Court.

iii.  *Todd A. Frealy, Chapter 7 Trustee of the Estate of Joaquin Andres "Andy" Acosta v. William D. Long.*, identified as Case No. 6:15-ap-01335-MJ, filed November 13, 2015. Order approving compromise and dismissing adversary proceeding was entered April 4, 2016,  and the adversary proceeding has been closed by the Court.

iv.   *Todd A. Frealy, Chapter 7 Trustee of the Estate of Joaquin Andres "Andy" Acosta v. Stanley Tulchin Accosiates – Western, Inc.*, identified as Case No. 6:15-ap-01338-MJ, filed November 13, 2015. Order approving compromise and dismissing the adversary proceeding was entered June 24, 2016, and the adversary proceeding has been closed by the Court.

19.   Debtor has filed numerous documents in opposition to my actions in the Individual Estate including, but not necessarily limited to the following appeals:

i.    a notice of appeal filed on June 13, 2016, referred to the United States District Court for the Central District of California ("District Court"), and identified as Case No. 5:16-cv-1270-GHK;

ii.   a notice of appeal filed on June 13, 2016, referred to the District Court, and identified as Case No. 5:16-cv-1271-GHK;

iii.  a notice of appeal filed on June 27, 2016, referred to the Ninth Circuit Bankruptcy Appellate Panel ("BAP"), and identified as Case No. CC-16-1190; and

iv.   a notice of appeal filed on July 12, 2016, referred to the District Court, and identified as Case No. 5:16-cv-1537-MWF (collectively, "Appeals").

20.   The Debtor wishes to retain the BBB Property and Inventory, and if authorized to purchase same, has agreed to fully cooperate with me throughout the remaining administration of the Estate.

///

19

1    21.    To avoid the expense and uncertainty of litigation, and without any admission of

2    liability, the Debtor and I have entered into the Global Settlement Agreement, which I believe is in

3    the best interest of the Individual Estate and its creditors. The primary terms of the Global

4    Settlement Agreement are as follows:

5    a.    Debtor shall pay the Individual Estate the sum of ONE HUNDRED THOUSAND

6    DOLLARS ($100,000.00) for purchase of the Individual Estate's Interest in the Inventory from the

7    Trustee; and FOUR HUNDRED AND FIFTY THOUSAND DOLLARS ($450,000.00) for

8    purchase of the Individual Estate's Interest in the BBB Property. A motion for approval of the

9    sales is being filed concurrently herewith.

10    b.    Subject only to real property taxes, the BBB Property will remain in the Debtor's

11    name, however same will be free and clear of all liens pursuant to section 363(f) of the Bankruptcy

12    Code. In addition, all right, title and interest of the Debtor's Estate and the Corporate Debtor's

13    Estate in the Inventory will remand to the Debtor, with the proceeds of sale to be distributed

14    pursuant to the Order Approving Second Settlement and Sharing Agreement entered on December

15    15, 2015.

16    c.    The Approval Order shall further provide that all of the Appeals are dismissed

17    pursuant to Rule 8023 of the Federal Rules of Bankruptcy Procedure. Copies of the Approval

18    Order shall be filed in the dockets of the District Court and the BAP in each of the Appeals, as

19    necessary.

20    d.    Debtor agrees to take no further action to contest or otherwise interfere with my

21    actions in the Individual Case and Adversary Proceedings including, but not necessarily limited to:

22    (1) filing additional appeals of, or motions to vacate or to reconsider, any existing orders or

23    judgments of the Bankruptcy Court including, but not necessarily limited to, any judgments

24    entered in the Adversary Proceeding and orders approving the sales of any of the Real Properties;

25    (2) contesting or otherwise interfering with my efforts to administer any assets of the Individual

26    Estate by filing or serving objections to same, or by trespassing on, or committing waste to, any

27    such assets; (3) contesting or otherwise interfering with my efforts to evaluate, object to, or pay the

28    claims of creditors of the Individual Estate or to compromise with such creditors; and/or (4) filing

20

1  motions to dismiss the Individual Estate and/or Adversary Proceedings, to disqualify the

2  Bankruptcy Court, or to remove me or my counsel.

3       e.     Debtor further agrees to cooperate with me with respect to all matters set forth in

4  the Global Settlement Agreement, including, but not necessarily limited to, promptly responding to

5  my and my counsel's requests for information, maintaining insurance on all assets of the

6  Individual Estate and providing proof of such insurance, and otherwise complying with his duties

7  as a debtor under the Bankruptcy Code.

8       I declare under penalty of perjury that the foregoing is true and correct and that this

9  declaration was executed on this 3rd day of November, 2016, at _Los Angeles_, California.

10

11                         Todd A. Frealy

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(DW)I:\TRUSTEE REPRESENTATION\FREALY\ACOSTA\DEBTOR GLOBAL\9019 Motion.doc

EXHIBIT "1"

## GLOBAL SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made as of the date fully executed below, by and between (i) Todd A. Frealy, duly appointed Chapter 7 trustee of the estate of Joaquin Andres "Andy" Acosta ("Trustee") and (ii) Joaquin Andres "Andy" Acosta ("Debtor") (collectively, "the Parties").

### RECITALS

This Settlement Agreement is made with reference to the following facts:

A.    On February 28, 2014 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 et seq.) before the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court") entitled, *In re Joaquin Andres "Andy" Acosta* and identified as Case No. 6:15-bk-12539-MJ ("Individual Case"). Trustee is the duly appointed, qualified, and acting Chapter 7 trustee of Debtor's bankruptcy estate ("Individual Estate").

B.    Debtor is the 100% shareholder and President of A.J. Acosta Co., Inc. On the Petition Date, A.J. Acosta Co., Inc. also filed a voluntary Chapter 7 petition before the Bankruptcy Court entitled, *In re A.J. Acosta Co., Inc.* and identified as Case No. 6:14-bk-12550-MJ ("Corporate Case"). The case was converted to Chapter 11 on March 18, 2014, and recovered to Chapter 7 on July 31, 2015. John P. Pringle is the duly appointed, qualified, and acting Chapter 7 trustee of A.J. Acosta Co., Inc.'s bankruptcy estate ("Corporate Estate").

C.    The Individual Estate includes parcels of real property including, but not necessarily limited to:

   i.     vacant land located at 1000 North Shore Drive, Big Bear, California 92314 ("North Shore Property");

   ii.    commercial property located at 42112 Big Bear Blvd., Big Bear Lake, CA 92315 ("Big Bear Blvd. Property");

   iii.   vacant lot located at 1080 Cascade Street, Big Bear, CA ("Cascade Property");

   iv.    residential property located at 460 Catalina Road, Big Bear, CA ("Catalina Property");

   v.     residential property located at 1725 Angels Camp Rd., Big Bear City, CA 92314 ("Angels Camp Property"); and

I:\TRUSTEE REPRESENTATION\FREALY\ACOSTA\Settlement Agmt GLOBAL.doc

EXHIBIT "1"

## GLOBAL SETTLEMENT AGREEMENT

vi.    residential property located at 30827 Live Oak Drive, Running Springs, CA 92382 ("Live Oak Property") (collectively, "Real Properties").

D.    The Big Bear Blvd. Property is the subject of the Bankruptcy Court's Order Directing the Debtor to Turnover Property of the Estate (Big Bear Property) Pursuant to Bankruptcy Code Section 542(a) entered on April 13, 2016.

E.    There are also certain items of personal property consisting of vehicles and equipment, ownership of which is disputed between the Individual Estate and Corporate Estate (collectively, "Personal Property"). The Personal Property is the subject of the Bankruptcy Court's prior orders including, but not necessarily limited to, the Order Approving Settlement and Sharing Agreement and Authorizing Completion of Private Pre-Sales of Non-Essential Inventory entered on November 24, 2014, the Order Approving Chapter 7 Trustee's Motion for Order Directing Debtor to Turn Over Property of the Estate Pursuant to Bankruptcy Code Section 542(a) and for Accounting entered on October 19, 2015, and the Order Approving Second Settlement and Sharing Agreement entered on December 15, 2015.

F.    Trustee has filed adversary proceedings (collectively, "Adversary Proceedings") in the Individual Case, as follows:

    i.    *Todd A. Frealy, Chapter 7 Trustee of the Estate of Joaquin Andres "Andy" Acosta v. Joaquin Andres "Andy" Acosta, an individual, Flavio Camacho, an individual, and Black Rock Capital, Inc., a Nevada Corporation.*, identified as Case No. 6:15-ap-1325-MJ, filed November 4, 2015. Default judgment against Flavio Camacho and Black Rock Capital entered March 24, 2016. Order granting default judgment and dismissing adversary proceeding as so defendant Joaquin Andres "Andy" Acosta only entered March 24, 2016.

    ii.    *Todd A. Frealy, Chapter 7 Trustee of the Estate of Joaquin Andres "Andy" Acosta v. Robert Lee Bell*, identified as Case No. 6:15-ap-01334-MJ, filed November 12, 2015. Default Judgment entered March 9, 2016 and adversary proceeding closed.

    iii.    *Todd A. Frealy, Chapter 7 Trustee of the Estate of Joaquin Andres "Andy" Acosta v. William D. Long.*, identified as Case No. 6:15-ap-01335-MJ, filed November 13, 2015. Order approving compromise and dismissing adversary proceeding entered April 4, 2016.

I:\TRUSTEE REPRESENTATION\FREALY\ACOSTA\Settlement Agmt GLOBAL.doc

EXHIBIT "1"

## GLOBAL SETTLEMENT AGREEMENT

iv. *Todd A. Frealy, Chapter 7 Trustee of the Estate of Joaquin Andres "Andy" Acosta v. Stanley Tulchin Accosiates – Western, Inc.*, identified as Case No. 6:15-ap-01338-MJ, filed November 13, 2015. Order approving compromise and dismissing adversary proceeding entered June 24, 2016.

G. Debtor has filed appeals in the Individual Case including, but not necessarily limited to:

i. a notice of appeal filed on June 13, 2016, referred to the United States District Court for the Central District of California ("District Court"), and identified as Case No. 5:16-cv-1270-GHK;

ii. a notice of appeal filed on June 13, 2016, referred to the District Court, and identified as Case No. 5:16-cv-1271-GHK;

iii. a notice of appeal filed on June 27, 2016, referred to the Ninth Circuit Bankruptcy Appellate Panel ("BAP"), and identified as Case No. CC-16-1190; and

iv. a notice of appeal filed on July 12, 2016, referred to the District Court, and identified as Case No. 5:16-cv-1537-MWF (collectively, "Appeals").

H. To avoid the expense and uncertainty of litigation, and without any admission of liability, the Parties deem it in their best interests to reach a global settlement of all of the matters encompassed herein.

### AGREEMENT

NOW THEREFORE, in consideration of the mutual promises set forth herein and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Bankruptcy Court Approval**

a. This Settlement Agreement is subject to approval by the Bankruptcy Court. Upon receipt of a fully executed Settlement Agreement, Trustee's counsel shall promptly file a motion for its approval ("Approval Motion") in the Individual Case pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, as well as Motions for approval of the sale of real property pursuant to 11 U.S.C. Section 363, and sale of personal property.

b. The Parties each agree (i) not to withdraw their consent to this Settlement Agreement; (ii) not to oppose, object to, appeal from or otherwise interfere with or assist or counsel

EXHIBIT "1"

## GLOBAL SETTLEMENT AGREEMENT

any other person or entity to oppose, object to, appeal from or otherwise interfere with the granting
of the Approval Motion; and (iii) not to take any action in prosecution or defense of any of the
matters encompassed herein until the Approval Order has become final and non-appealable.

    2.    **Settlement Consideration**

    a.    Debtor shall pay the Estate the sum of ONE HUNDRED THOUSAND DOLLARS
($100,000.00) for purchase of the Estate's Interest in the Personal Property from the Trustee; and
FOUR HUNDRED AND FIFTY THOUSAND DOLLARS ($450,000.00) for purchase of the
Estate's Interest in the Big Bear Blvd. Property from the Trustee, payable as follows:

        i.    Upon execution of this Agreement, Debtor shall provide Trustee a refundable
earnest money deposit by certified check or cashier's check in the amount of
FIFTY FIVE THOUSAND DOLLARS ($55,000.00), representing a 10%
deposit towards the purchase of the Personal Property from Trustee, and a
10% deposit towards the purchase of the Big Bear Blvd. Property from the
Trustee;

        ii.    On or before the hearing on approval of this Agreement, Debtor shall provide
Trustee with remaining funds by certified check or cashier's check in the
amount of FOUR HUNDRED AND FIVE THOUSAND DOLLARS
($405,000.00) as consideration for the purchase of the Big Bear Blvd.
Property from Trustee.

        iii.    On or before the hearing on approval of this Agreement, Debtor shall provide
Trustee with remaining funds by certified check or cashier's check in the
amount of NINTY THOUSAND DOLLARS ($90,000.00), as consideration
for the purchase of the Personal Property from Trustee.

    b.    The Approval Order shall provide that (i) all right, title and interest of the Individual
Estate in the Big Bear Blvd. Property will be conveyed to Debtor, free and clear of such liens and
encumbrances pursuant to section 363(f) of the Bankruptcy Code; and (ii) all right, title and interest
of the Individual Estate and the Corporate Estate in the Personal Property will be conveyed to
Debtor, with the proceeds of sale to be distributed pursuant to the Order Approving Second
Settlement and Sharing Agreement entered on December 15, 2015.

EXHIBIT "1"

## GLOBAL SETTLEMENT AGREEMENT

c.      The Approval Order shall further provide that all of the Appeals are dismissed pursuant to Rule 8023 of the Federal Rules of Bankruptcy Procedure. Copies of the Approval Order shall be filed in the dockets of the District Court and the BAP in each of the Appeals.

d.      Debtor agrees to take no further action to contest or otherwise interfere with Trustee's actions in the Individual Case and Adversary Proceedings including, but not necessarily limited to: (1) filing additional appeals of, or motions to vacate or to reconsider, any existing orders or judgments of the Bankruptcy Court including, but not necessarily limited to, any judgments entered in the Adversary Proceeding and orders approving the sales of any of the Real Properties; (2) contesting or otherwise interfering with Trustee's efforts to administer any assets of the Individual Estate by filing or serving objections to same, or by trespassing on, or committing waste to, any such assets; (3) contesting or otherwise interfering with Trustee's efforts to evaluate, object to, or pay the claims of creditors of the Individual Estate or to compromise with such creditors; and/or (4) filing motions to dismiss the Individual Case and/or Adversary Proceedings, to disqualify the Bankruptcy Court, or to remove Trustee and/or his counsel.

e.      Debtor further agrees to cooperate with Trustee with respect to all matters identified in paragraph 2(f) above including, but not necessarily limited to, promptly responding to Trustee's requests for information, maintaining insurance on all assets of the Individual Estate and providing proof of such insurance, and otherwise complying with his duties as a debtor under the Bankruptcy Code.

3.      **Successors and Assigns**

This Settlement Agreement shall be binding on and shall inure to the benefit of the Parties and, as may be applicable, their respective heirs, legal representatives, successors and assigns.

4.      **Choice of Law**

This Settlement Agreement is entered into and shall be performed in the State of California and shall be governed by and construed and interpreted in accordance with its internal laws and without regard to otherwise applicable principles of conflicts of laws or choice of laws, whether by statute, rule or judicial determination and whether of the State of California or any other jurisdiction.

5.      **Interpretation**

Each of the Parties has reviewed this Settlement Agreement and agrees that any question of interpretation shall not be resolved by any rule providing for interpretation against a drafting Party.

I:\TRUSTEE REPRESENTATION\FREALY\ACOSTA\Settlement Agmt GLOBAL.doc

EXHIBIT "1"

## GLOBAL SETTLEMENT AGREEMENT

Whenever possible, each provision of this Settlement Agreement shall be interpreted in such manner as to be valid under applicable substantive laws (excluding choice of laws) of California.

### 6.  No Inducement

Each Party acknowledges and represents to the other Party that no promise, representation or inducement not expressed herein has been made in connection with this Settlement Agreement.

### 7.  No Admission of Liability

The execution of this Settlement Agreement and the performance of its terms and conditions effectuate the settlement of claims which are contested and denied. Nothing contained in this Settlement Agreement nor the performance of any act hereunder is or shall be construed as an admission by any Party of any wrong doing or liability of any kind to the other Party.

### 8.  Costs and Expenses

a.  Each Party shall bear its own attorneys' fees and expenses incurred in connection with the negotiation of the terms of, preparation of and performance of this Settlement Agreement.

b.  If any legal action is necessary to enforce the terms and conditions of this Settlement Agreement, the substantially prevailing Party shall be entitled to recover all costs of suit and reasonable attorneys' and other professionals' fees and expenses incurred as determined by the court in that action.

### 9.  Jurisdiction and Venue

Each Party hereby irrevocably consents to the exclusive personal jurisdiction of and proper venue in the Bankruptcy Court for the trial, entry of findings, entry final orders and judgments solely for the purpose of resolving any and all disputes under, arising from or out of or relating to this Settlement Agreement or the Parties' right and obligations with respect thereto.

### 10.  Waiver of Jury Trial

To the extent permitted by applicable law, each Party hereby expressly waives the right to trial by jury in any action or other proceeding under, arising from or out of or relating to this Settlement Agreement or the Parties' right and obligations with respect thereto.

///

///

///

///

Page 6 of 8

EXHIBIT "1"

## GLOBAL SETTLEMENT AGREEMENT

### 11.   Additional Documents

Each Party agrees to execute, as appropriate cause to be acknowledged and deliver such additional documents and instruments and perform such further acts as may be reasonably necessary or appropriate to effectuate the purposes of this Settlement Agreement.

### 12.   Notices

a.   Any notice, service, or demand permitted under this Settlement Agreement may be given by facsimile or pdf transmission (with proof of receipt), by postage prepaid first class mail or by Federal Express (or other over-night delivery service) (with proof of receipt) or by personal delivery as follows:

To Trustee: c/o Arturo M. Cisneros (arturo@mclaw.org) of Malcolm Cisneros, 2112 Business Center Drive, Irvine, California 92612 (fax no. 949-252-1032).

To Debtor: c/o Joaquin Andres "Andy" Acosta (acostatrees@msn.com), P.O. Box 2889, Big Bear Lake, CA 92315.

b.   Notice shall be deemed effective upon receipt if given by email or facsimile transmission or Federal Express (or other over-night delivery service) or if given by postage prepaid first class mail on the third business day after deposit into an active daily pick up U.S. postal box or with an authorized U.S. postal office.

c.   Any Party may change the person to whom and/or the address to which notice to that Party shall be delivered by giving notice of such change in accordance with ¶ 12a above.

### 13.   Headings

The headings in this Settlement Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

### 14.   Signing by Facsimile and in Counterparts

This Settlement Agreement may be executed by facsimile or pdf signature in separate counterparts and shall become effective when such separate counterparts have been exchanged between the Parties.

### 15.   Entire Agreement

This Settlement Agreement contains the entire understanding between the Parties and supersedes any prior negotiation, representations, understanding and agreements, whether oral or

EXHIBIT "1"

## GLOBAL SETTLEMENT AGREEMENT

written, between them concerning its subject. No waiver of any of the provisions of this Settlement
Agreement shall be a continuing waiver unless expressly provided in writing.

Dated: ~~August~~ Sept 12, 2016

By: _____

Todd A. Frealy, duly appointed Chapter 7 trustee
of the estate of Joaquin Andres "Andy" Acosta

Dated: ~~August~~ Sept 12, 2016

_____
Joaquin Andres "Andy" Acosta

APPROVED SOLELY AS TO FORM:

MALCOLM ♦ CISNEROS

Dated: ~~August~~ Sept 12 2016

By: _____

Arturo M. Cisneros
Attorneys for Todd A. Frealy, duly appointed
Chapter 7 trustee of the estate of Joaquin
Andres "Andy" Acosta

Page 8 of 8

EXHIBIT "1"

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

2112 Businsess Center Drive, 2nd Floor, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (specify): <u>Trustee's Motion for Approval of Global</u>
<u>Settlement Agreement</u>

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) <u>11/07/2016</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

SEE ATTACHED LIST

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) <u>11/07/2016</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

SEE ATTACHED LIST

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) <u>11/07/2016</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

SEE ATTACHED LIST

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 11·07·16 | Erica F. Pedraza | |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

## 1. PARTIES SERVED UPON FILING VIA ECF – ELECTRONIC LIST

- TOAN B CHUNG   TBCHUNG@RPMLAW.COM,
  TOAN.B.CHUNG@GMAIL.COM;ADERGALESTIAN@RPMLAW.COM
- ARTURO M CISNEROS   ARTURO@MCLAW.ORG
- TODD A. FREALY (TR)   TAFTRUSTEE@LNBYB.COM, TFREALY@ECF.EPIQSYSTEMS.COM
- BARRY S GLASER   BGLASER@SWESQ.COM, ERHEE@SWESQ.COM
- ROBERT GRAWL   BGRAWL@FINANCIALFEDERAL.COM
- EVERETT L GREEN   EVERETT.L.GREEN@USDOJ.GOV
- LAUREL A HOEHN   LAURELHOEHN@CGCLAW.COM
- JEFFREY HURON   JHURON@DYKEMA.COM,
  EBAILON@DYKEMA.COM;CATHERALL@DYKEMA.COM
- GREGORY K JONES   GJONES@DYKEMA.COM, EDRAPER@DYKEMA.COM
- KIANA KHAJEH   KKHAJEH@MCLAW.ORG
- RIKA KIDO   RKIDO@SHBLLP.COM, AVERNON@SHBLLP.COM
- MICHAEL C MADDUX   1MCMNLA@GMAIL.COM, MCM101@HOTMAIL.COM
- WILLIAM MALCOLM   BILL@MCLAW.ORG
- CHRISTOPHER MINIER   BECKY@RINGSTADLAW.COM
- BARRY L O'CONNOR   UDLAWBK@AOL.COM
- J. ALEXANDRA RHIM   ARHIM@HEMAR-ROUSSO.COM
- CATHY TA   CATHY.TA@BBKLAW.COM,
  ARTHUR.JOHNSTON@BBKLAW.COM;LISA.SPENCER@BBKLAW.COM
- UNITED STATES TRUSTEE (RS)   USTPREGION16.RS.ECF@USDOJ.GOV

## 2. PARTIES SERVED VIA UNITED STATES MAIL

**DEBTOR IN PRO PER:**
~~ADDRESS OF RECORD~~
~~JOAQUIN ANDRES "ANDY" ACOSTA~~
~~460 CATALINA ROAD~~
~~BIG BEAR, CA 92315~~
NO STREET DELIVERY

**DEBTOR IN PRO PER AT ADDRESS PROVIDED ON PLEADINGS:**
JOAQUIN ANDRES "ANDY" ACOSTA
PO BOX 2889
BIG BEAR LAKE, CA 92315

### SEE ADDITIONAL PARTIES SERVED VIA UNITED STATES MAIL

## 3. PARTIES SERVED VIA PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION, OR EMAIL

**JUDGE (OVERNIGHT MAIL)**
THE HONORABLE MEREDITH A. JURY
UNITED STATES BANKRUPTCY COURT
3420 TWELFTH STREET, STE. 325
RIVERSIDE. CA 92501

**DEBTOR, VIA ELECTRONIC SERVICE**
JOAQUIN ANDRES "ANDY" ACOSTA
ACOSTATREES@MSN.COM